ESPANOLA WAY CORP.,
Plaintiff-Appellant,

v.

Murray MEYERSON, et al.,
Defendants-Appellees.

No. 81–5847.

United States Court of Appeals,
Eleventh Circuit.

Nov. 1, 1982.
Rehearing Denied Dec. 1, 1982.

Edward S. Kanbar, Miami, Fla., for plaintiff-appellant.

Thomas M. Pflaum, Jean Kronheim, Asst. City Attys., City of Miami Beach, Miami Beach, Fla., for defendants-appellees.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is an appeal by Espanola Way Corporation from a summary judgment in favor of the defendants entered by the district court. We reverse.

Paraphrasing, plaintiff-appellant's complaint sets forth substantially the following facts. Appellant alleged that at various meetings of the Miami Beach City Commission the defendants, all of whom were Commissioners, addressed the problem of the great influx of Cuban refugees. The Commissioners asserted that the refugee population contained a large criminal element and that means should be sought to reduce that element. The Commissioners decided that they should attack the hotels that housed the refugees and stated their goal to be the closing of those hotels. Appellant further alleged that the Commissioners formed a task force of building code inspectors and fire inspectors and directed it to conduct frequent inspections of designated hotels and to write numerous and burdensome violations of these hotels until they were driven out of business. Prior to the problem of the Cuban refugees, the Clay Hotel, owned by appellant corporation, had been inspected by the building code inspectors and fire inspectors, and all the violations were corrected to the satisfaction of the inspectors. After the problem of the Cuban refugees, the hotel was inspected and reinspected by teams of building code inspectors and fire inspectors. As a result of these inspections, 344 building code violations were cited as well as numerous fire violations. Appellant further alleged that these inspections were designed to harass and drive the Clay Hotel out of business. Appellant also alleged that the unwarranted violations were costly to repair and occupied the time and attention of the staff of the hotel. The harassment allegedly caused a serious loss to the hotel

of rentals, a decrease in spirit and morale of the staff, and a loss of better clients which the hotel was trying to attract, the latter loss caused by the bad publicity and characterization of the hotel as a slum and a haven for criminals.

The Commissioners filed motions to dismiss, to strike, and for summary judgment. These motions along with an accompanying memo and affidavits denied the essential allegations of the complaint, maintained that the complaint failed to state a cause of action, and asserted an affirmative defense of absolute immunity. Appellant filed a memo in opposition to appellees' motion in which it stated that only a qualified immunity was available and even that was not applicable in the instant case. Appellees filed a reply memorandum reasserting absolute immunity and stating that if only a qualified immunity existed, each Commissioner acted in good faith.

Four days later, the district court granted appellees' motions on three alternative grounds: first, the complaint failed to state a cause of action in that it contained no allegation regarding a violation of federal law or deprivation of a constitutional right; second, even assuming such violation had been alleged, no subject matter jurisdiction was present because the Commissioners, as legislators, were absolutely immune from suit; and third, even if Commissioners enjoyed only qualified immunity, the record on the motion for summary judgment showed a good faith defense.

Appellant moved for reconsideration of the order and to reopen the judgment. Appellees then filed a motion to strike, a response to appellant's motion to reopen, and a motion for attorney's fees. The district court denied appellant's motions, and appellant appeals to this court.

## I.   Sufficiency of the Complaint

■ Although no specific mention is made of a federal or constitutional right, the complaint does contain factual allegations sufficient to state a § 1983 claim based on the fourteenth amendment—that the Commissioners are taking appellant's property in violation of due process of law.

In *Mansell v. Saunders,* 372 F.2d 573 (5th Cir. 1967), the court stated that the sufficiency of the complaint in a § 1983 action was to be viewed from the standpoint of notice pleading. Florida law recognizes business reputation/good will as an interest protectable under the strictures of § 1983. *Marrero v. City of Hialeah,* 625 F.2d 499 (5th Cir. 1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). *See also Bradford v. Bronner,* 665 F.2d 680 (5th Cir. 1982).

## II.   Absolute Immunity

■ The Commissioners seek to invoke an absolute immunity under § 1983 for their allegedly unconstitutional acts. The Fifth Circuit has recognized such an immunity in favor of local legislators for conduct in furtherance of their legislative duties. *Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. 1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). However, the Supreme Court has long held that no immunity exists for actions outside the sphere of legitimate legislative activity. *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). "[I]t is the official *function* that determines the degree of immunity required, not the *status* of the acting officer." *Marrero,* 625 F.2d at 508 (emphasis in original). Imposing liability upon the Commissioners for actions conducted outside their legislative role does not undermine the policies granting immunity to certain officials. *See, e.g., Marrero,* 625 F.2d at 509.

■ Thus, the absolute immunity inquiry becomes one of whether the Commissioners in the instant case were engaging in legislative activity. In the cases finding absolute immunity, the legislative function has involved actions such as the vetoing of an ordinance passed by the city's legislative body, *Hernandez,* 643 F.2d 1188, and the examining of a plaintiff before a legislative committee, *Tenney,* 341 U.S. 367, 71 S.Ct. 783. *Hernandez* also noted that the vote of a city councilman constitutes an exercise of legislative decision-making.

Here, apparently the Commissioners were merely discussing crime and efforts to reduce it by enforcing building and fire code violations. No act or resolution was contemplated or passed. No vote was taken. We do not pretermit a factual development that would disclose that the Commissioners were acting in a legislative role. However, the meager facts presented in this record are too equivocal to warrant summary judgment. At oral argument, we were told that the City of Miami Beach has a Commission-City Manager form of government and that the Commissioners were acting in a legislative role by way of instructing the city manager. The facts should first be fully developed before attempts are made to apply the law in this difficult area.

## III. Qualified Immunity

██ Qualified immunity is an affirmative defense and thus must be asserted by defendants. *Williams v. Treen,* 671 F.2d 892, 896 (5th Cir. 1982). Aside from affirmatively asserting the defense, defendants must prove that their acts fall within the scope of discretionary authority. This involves a question of fact. *Id.* at 897. A bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice. In *Williams,* the court found that the district court erred in dismissing the case without first developing a factual record

necessary to support a finding that each defendant was entitled to qualified immunity. Further, the defense of qualified immunity is unavailable to officials who, though otherwise covered, act with malice [1] or contrary to clearly established law. *Procunier v. Navarette,* 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1979).

In the case before us, several considerations operate concomitantly to warrant reversal of the district court's grant of summary judgment. First, defendants plead only absolute immunity in their motion to dismiss, to strike, and for summary judgment and merely stated in their reply memorandum that even if only qualified immunity existed, the Commissioners acted in good faith. Second, very little in the way of a factual record had been developed at the time of the district court's dismissal. Third, assuming the plaintiff's allegations have merit, an undertaking of repeated harassment is not within the scope of the Commissioners' discretionary authority. Fourth, the tactics employed by the Commissioners and inspectors arguably involve malice toward the plaintiff. Fifth, a conscious attempt to deprive property owners of property without due process of law clearly contravenes established law. Finally, there is some question as to whether summary judgment may be an appropriate means of resolving a state of mind issue, at

1. Accord, *Harlow v. Fitzgerald,* —— U.S. ——, ——, 102 S.Ct. 2727, 2737 2738, 73 L.Ed.2d 396 (1982).

Qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. *Gomez v. Toledo,* 446 U.S. 635 [100 S.Ct. 1920, 64 L.Ed.2d 572] (1980). Decisions of this Court have established that the "good faith" defense has both an "objective" and a "subjective" aspect. The objective element involves a presumptive knowledge of and respect for "basic, unquestioned constitutional rights." *Wood v. Strickland,* 420 U.S. 308, 320 [95 S.Ct. 992, 1000, 43 L.Ed.2d 214] (1975). The subjective component refers to "permissible intentions." *Ibid.* Characteristically the Court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both to the objective and subjective elements, we have held that qualified immunity would be

defeated if an official *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with malicious intention* to cause a deprivation of constitutional rights or other injury...." *Id.,* at 321–322 [95 S.Ct. at 1000–1001] (emphasis added).

The subjective element of the good faith defense frequently has proved incompatible with our admonition in *Butz* that insubstantial claims should not proceed to trial. Rule 56 of the Federal Rules of Civil Procedure provides that disputed questions of fact ordinarily may not be decided on motions for summary judgment. And an official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury.

(footnotes omitted).

least in the absence of a hearing. *Harlow v. Fitzgerald,* —— U.S. ——, —— – ——, 102 S.Ct. 2727, 2736–2738, 73 L.Ed.2d 396 (1982); *Williams,* 671 F.2d at 897 n.7; *Barker v. Norman,* 651 F.2d 1107, 1127 (5th Cir. 1981).

For the above reasons, the district court's order must therefore be REVERSED.